Jeffrey **PRAVIC**, Plaintiff,

v.

**U.S. INDUSTRIES—CLEARING**, Defendant.

Civ. No. 85–CV–74636–DT.

United States District Court, E.D. Michigan, S.D.

March 7, 1986.

Howard Radner, Zeff & Zeff, Detroit, Mich., for plaintiff.

Dennis Goebel, Harvey, Kruse, Westen & Milan, P.C., Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER ON SANCTION

COHN, District Judge.

### I.

This is a products liability case. On October 4, 1985 defendant U.S. Industries—Clearing, a non-resident corporation, removed the case to this court from the Wayne County Circuit Court after a directed verdict was entered in favor of the remaining co-defendant, Nordic Tool, a Michigan corporation. On October 11, 1985 I remanded the case to the state court on the grounds that diversity achieved by virtue of the involuntary dismissal of a resident defendant did not allow for removal. In the remand order I reserved decision on a request for attorney fees in the petition to remand. Plaintiff now asks that I award attorney fees for an improvident removal. Defendant resists on the grounds there was a reasonable basis in law for the removal and the fact that I

disagreed does not warrant an award of attorney fees. Defendant is wrong. There was no basis in law for the removal.

### II.

#### A.

■ P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and The Federal System* 1203–04 (2d ed. 1973) says:

In *Powers v. Chesapeake & O. Ry.*, 169 U.S. 92, 101 [18 S.Ct. 264, 267, 42 L.Ed. 673] (1898), the plaintiff voluntarily dismissed as to the resident defendants after the time for answer; and the Court, saying that "the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right," held that the nonresident defendant could then remove. But in *Whitcomb v. Smithson*, 175 U.S. 635 [20 S.Ct. 248, 44 L.Ed. 303] (1900), the Court declined to permit removal after the resident defendant had been eliminated from the case by a directed verdict.

These cases were generally interpreted as drawing a distinction between subsequent action by a court, which did not make a case removable, and voluntary action by the plaintiff, which did.

1A J. Moore & B. Ringle, *Federal Practice* ¶ 0.168 [3.–5–6], at 597 (2d ed. 1985) says:

If, though, apart from fraudulent joinder, plaintiff states a nonremovable case in his initial complaint, involuntary changes will not make the case removable; they must have been brought about by the voluntary act of the plaintiff.

14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3723, at 315–18 (2d ed. 1985) (Footnotes omitted) says:

Prior to 1949, a case did not become removable if the nondiverse party was eliminated from the case by a directed verdict, unless that party had been fraudulently joined originally to defeat removal. The federal courts drew a distinction

between the state judge terminating the action as to the nondiverse party, which did not make a case removable, and the plaintiff voluntarily terminating the action as to a nondiverse party, which permitted removal. This distinction had merit in it [sic] that it prevented removal when the nondiverse party was eliminated by a court order that might be reversed on appeal. It is not entirely clear whether this distinction has survived the 1949 amendment to Section 1446, which authorizes removal, if the case was not initially removable, upon "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Read literally the reference to "order" in the statute seems to overrule the pre-1949 cases and permit removal when a nondiverse party is eliminated by a court order related to the merits of the dispute. It should be noted that this construction of the statute is not inevitable. It seems very doubtful that Congress intended to abolish the former distinction, although the legislative history is quite ambiguous. Most cases subsequent to the amendment have held that the distinction has survived and on balance this seems to be the proper view.

These text statements correctly state the law on the right to remove after an involuntary dismissal of resident defendants; it cannot be done!

### B.

■ Defendant justifies its right to the reasonable belief that removal was appropriate based on a memorandum of law on the question prepared by the law firm which represented Nordic Tool in the state court case. The difficulty with defendant's reliance on the memorandum is several fold. First, defendant did no independent research. Second, the memorandum quite

clearly notes that "[it] is perhaps less clear whether removal is possible if a nonresident defendant is dismissed against the wishes of the plaintiff." The memorandum then goes on to cite two cases where "the court allowed removal despite the involuntary dismissal of a resident defendant." However, one of the cases had been overruled and the other case simply does not stand for the proposition that a case may be removed after the involuntary dismissal of resident defendants.

The first case cited in the memorandum, *Lyon v. Illinois Central R.R.*, 228 F.Supp. 810 (S.D.Miss.1964), allowed removal in face of the argument diversity had been obtained by the involuntary dismissal of a resident defendant. In *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967), the Court of Appeals said: "[W]e ... reject the *Lyon* reasoning." The Fifth Circuit then went on to say: "The manner in which the resident defendant was dismissed in the instant case, by a directed verdict, is the classic situation where removal long has been denied for good reason." *Id. See also Self v. General Motors Corp.*, 588 F.2d 655, 658 n. 4 (9th Cir.1978).

The second case cited in the memorandum, *Erdey v. American Honda Co.*, 96 F.R.D. 593 (M.D.La.1983), held that a settlement with resident defendants was a voluntary act making removal appropriate even though there was no formal judgment of dismissal—a completely different circumstance than obtained in this case.[1]

### III.

In *Grinnell Brothers, Inc. v. Touche Ross & Co.*, 655 F.2d 725 (6th Cir.1981) and *Kasprowicz v. Capitol Credit Corporation*, 524 F.Supp. 105 (E.D.Mich.1981), attorney fees were awarded "in the interests of justice" for an improvident removal. As I observed in *Lear Siegler, Inc. v. Turner Quick-Lift Corporation*, No. 84-CV-3353-DT (E.D.Mich. Memorandum And Order on Sanctions Jan. 31, 1985), the 1983 amend-

---

**1.** For a more complete analysis of the *Erdey* decision, *see DiNatale v. Subaru of America,* 624

F.Supp. 340, 343 (E.D.Mich.1985).

ments to Fed.R.Civ.P. 11 requires a reexamination of the "interests of justice" standard as a basis for awarding attorney fees for improvident removal.

Rule 11 reads in part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is *warranted by existing law or good faith argument for the extension, modification, or reversal of existing law* ... (emphasis added).

As pointed out in the Advisory Committee Note to Rule 11, 97 F.R.D. 165, 198 (1983):

The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances.

The new rule is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* at 199. That phenomenon was not at work here. Removal in this case was done without any independent inquiry as to the legal basis for such action.

�though In an analogous situation *Long v. Quantex Resources, Inc.*, (108 F.R.D. 416) (S.D.N.Y.1985), local counsel relied on foreign counsel before signing papers and representing them to the court. The argument in the papers was subsequently abandoned. The court in sanctioning local counsel under Rule 11 stated:

It therefore seems to me that at the very least, a local counsel that signs papers of foreign counsel must read the papers and from that have a basis for a good faith belief that the papers on their face appear to be warranted by the facts asserted and the legal arguments made, and are not interposed for any improper purpose.

*Id.* at 417. By like token an attorney may not rely on a legal memorandum prepared by a second lawyer without independently verifying the reasoning of the cases cited in the memorandum and without "Shepardizing" the cases cited in the memorandum. *See Smith v. United Transportation Union Local No. 81,* 594 F.Supp. 96, 101 (S.D. Calif.1984). In sum defendants' conduct regarding the legal basis for the removal was not reasonable.[2]

### IV.

▇ Fed.R.Civ.P. 11 also reads in part: If a pleading is signed ... in violation of [the rule] the court ... shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay the other party ... the amount of reasonable expenses incurred because of the filing of the pleading ... including a reasonable attorney's fee.

A request for attorney's fees normally should include an amount, a description of the hours involved and hourly rate of the attorney handling the matter. This was not done here. There is, however, no good reason for prolonging the matter. The Advisory Committee Note, *supra,* 97 F.R.D. at 201 cautions about the "cost of satellite

---

**2.** As the Ninth Circuit Court of Appeals noted in analyzing the Rule 11 requirement that a pleading is warranted under "existing law" or a good faith argument for the extension, modification, or reversal of "existing law":

It is obvious from the text of the Rule that the pleader need not be correct in his view of the law. Thus the granting of a motion to dismiss the complaint for failure to state a claim, or the granting of a summary judgment against the pleader is not dispositive of the issue of sanctions. The pleader, at a minimum, must have a "good faith argument" for his or her view of what the law is, or should be. A good

faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after "reasonable inquiry." Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions.

*Zaldivar v. Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986).

litigations." Since the rule speaks in terms of an "appropriate sanction" I am satisfied that what is appropriate to the circumstances here is that:

Defendant's attorney shall pay to plaintiff the sum of $1,000 and to the Clerk of the Court the sum of $300 for failure to make reasonable inquiry that the allegations of the removal petition were warranted by existing law, or a good faith argument for the reversal of existing law.

Proof of payment shall be filed with the Court within ten (10) days.

SO ORDERED.[3]

---

**3.** For a more general view of Rule 11 see *Olga's Kitchen of Hayward, Inc. v. Dr. Michael Papo,* 108 F.R.D. 695 (E.D.Mich.1985).